UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| THOMAS D. LAYS HARD,<br><br>                Plaintiff,<br><br>  vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,<br><br>                Defendant. | CIV. 14-5063-JLV<br><br>ORDER |

**INTRODUCTION**

Plaintiff Thomas Lays Hard filed a complaint appealing from an administrative law judge's ("ALJ") decision denying disability insurance benefits. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 10). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 12). The parties filed their JSMF. (Docket 13). The parties also filed a joint statement of disputed material facts ("JSDMF"). (Docket 14). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 15) is granted.

**FACTUAL AND PROCEDURAL HISTORY**

The Commissioner does not dispute the accuracy of the facts contained in the JSDMF, but only challenges the relevance of those facts. (Docket 14 at p. 1). The parties' JSMF (Docket 13) and JSDMF (Docket 14) are incorporated by

reference. Further recitation of salient facts is incorporated in the discussion section of this order.

On October 12, 2010, Mr. Lays Hard filed applications for disability insurance benefits and supplemental social security income alleging an onset of disability date of October 15, 1999. (Docket 13 ¶ 1). On April 2, 2013, the ALJ issued a decision finding Mr. Lays Hard was not disabled. Id. ¶ 2; see also Administrative Record at pp. 86-100 (hereinafter "AR at p. ___"). On August 28, 2014, the Appeals Council denied Mr. Lays Hard's request for review and affirmed the ALJ's decision. (Docket 13 ¶¶ 2 & 3). The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. It is from this decision which Mr. Lays Hard timely appeals.

The issue before the court is whether the ALJ's decision of April 2, 2013, that Mr. Lays Hard was not "under a disability, as defined in the Social Security Act, since October 12, 2010, [through April 2, 2013]" is supported by the substantial evidence in the record as a whole.[1] (AR at p. 99) (bold omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by

---

[1] Mr. Lays Hard's only remaining claim on appeal is for supplemental security income ("SSI") benefits under Title XVI. (Docket 13 ¶ 2). See also (Docket 16 at p. 1) ("Plaintiff requests judicial review of a decision . . . denying plaintiff's application for supplemental security income (Title XVI) . . . .").

substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial

3

evidence.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).  A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' "  Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).  Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act.  See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to SSI benefits under Title XVI.  20 CFR § 416.920(a).  If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.  Id.  The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).  See also Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992) (the criteria under 20 CFR

§ 416.920 are the same under 20 CFR § 404.1520 for disability insurance benefits).[2]  The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations.  (AR at pp. 89-90).

### STEP ONE

At step one, the ALJ determined Mr. Lays Hard had not been engaged in substantial gainful activity since October 12, 2010, the date upon which he protectively filed for SSI benefits.[3]  (AR at p. 92 ¶ 6).

### STEP TWO

"At the second step, [the agency] consider[s] the medical severity of your impairment(s)."  20 CFR § 416.920(a)(4)(ii).  "It is the claimant's burden to establish that [his] impairment or combination of impairments are severe."  Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).  A severe impairment is defined as one which significantly limits a physical or mental ability to do basic work activities.  20 CFR § 416.905.  An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  Kirby, 500 F.3d at 707.  "If the impairment would have no more

---

[2] All further references will be to the regulations governing SSI benefits, except where specifically indicated.

[3] The ALJ also found Mr. Lays Hard had not been engaged in substantial gainful activity since October 15, 1999, through December 2004 for consideration of disability benefits under Title II.  (Docket 13 ¶ 35).

than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." Id. (citation omitted).  Additionally, the impairment must have lasted at least twelve months or be expected to result in death.  See 20 CFR § 416.905.

The ALJ identified Mr. Lays Hard suffered from the following severe impairments: "fibrosis and cirrhosis and liver damage 'due to alcohol abuse,' alcoholism, hypertension, decreased vision, obesity, diabetes mellitus, and hypothyroidism."  (Docket 13 ¶ 37).  Mr. Lays Hard objects to the ALJ limiting his severe impairments to these seven conditions.  (Docket 16 at pp. 14 & 18-19).  He argues the ALJ should have included the following additional severe impairments: "right-eye blindness," "left-eye retinopathy," "chronic kidney disease"[4] and "anemia of chronic disease."[5]  Id. at p. 14.

Mr. Lays Hard argues "[s]tep two serves a 'building block' function . . . . The purpose of this section is . . . to illustrate how these issues form the essential building blocks of the decision. . . . As each issue is resolved, another arises,

---

[4]"Chronic Kidney Disease: the slow loss of kidney function over time.  The main job of the kidneys is to remove wastes and excess water from the body.  Diabetes and high blood pressure are the two most common causes. . . . Complications include anemia, changes in blood sugar, peripheral neuropathy, dementia, high blood pressure, high phosphorous levels, high potassium levels, hyperparathyroidism, increased risk of infections, liver damage, malnutrition, and edema[.]" (Docket 13 ¶¶ 271-72).

[5]"Anemia of chronic disease is anemia that is found in people with certain long-term (chronic) medical conditions, including chronic kidney disease. Anemia of chronic disease is often mild. When symptoms occur, they may include feeling weak or tired.  The condition is rarely severe enough to need a blood transfusion."  (Docket 13 ¶ 269).

6

until eventually the ultimate issue is reached." Id. at p. 19 (internal citation omitted). He asserts the "[f]ailure to identify medically determined impairments sets the stage for errors and failure of substantial evidence. This is because the step two finding is foundational: it informs the step three finding, the credibility finding, and assessment of residual functional capacity." Id. (referencing Pratt v. Sullivan, 956 F.2d 830, 836-37 (8th Cir. 1992)).

The Commissioner argues "[t]o the extent that other impairments could be classified as severe, such error is harmless when the ALJ reached the proper conclusion that Lays Hard could not be denied benefits at step two and went to the next step of the sequential evaluation process." (Docket 19 at p. 6) (referencing Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008)). The Commissioner acknowledges the ALJ is required to consider the combined effects of all of Mr. Lays Hard's impairments. Id. at pp. 6-7. The Commissioner asserts "[t]he ALJ did so . . . providing a detailed analysis of all of Lays Hard's impairments." Id. at p. 7. For these reasons, the Commissioner urges the court to dismiss Mr. Lays Hard's arguments at step two. Id.

The Commissioner acknowledges the evidence supports factual findings that Mr. Lays Hard suffers from "chronic kidney failure," "blind right eye" and "anemia of chronic disease." (Docket 13 ¶ 46). How these factual determinations impact whether each or any of these conditions are severe will be discussed during the separate analysis of each condition.

7

VISUAL IMPAIRMENTS

At step two when evaluating the disability claim the ALJ found Mr. Lays Hard had a non-severe impairment of "decreased vision of the right eye." (Docket 13 ¶ 36).  When evaluating the supplemental income claim the ALJ found a severe impairment of "decreased vision."  Id. ¶ 37.  The ALJ did not specifically articulate the nature or level of visual acuity existing in the record to support the second finding.

In 1999, the medical record charted that Mr. Lays Hard injured his right eye when it was struck with a bottle rocket five years earlier.  (Docket 14 ¶ 8). Four years later, the Indian Health Service ("IHS") Kyle Clinic recorded visual acuity of the right eye at 20/400 and that Mr. Lays Hard was blind in his right eye.  Id. ¶ 19.  This condition is permanent.  Id. ¶¶ 21 & 85; see also Docket 13 ¶¶ 78, 114 & 121.  The Commissioner acknowledges Mr. Lays Hard is blind in his right eye.  (Docket 13 ¶ 46).

The record concerning Mr. Lays Hard's left eye is less clear.  In June 2001, Ophthalmologist Dr. Geoffrey Slingby performed a "temporal clear cornea cataract extraction with implantation of posterior chamber intraocular lens left eye."  (Docket 14 ¶ 10).  A vision test in 2003 charted Mr. Lays Hard's left eye with visual acuity of 20/30.  Id. ¶ 19.

On July 13, 2011, Mr. Lays Hard completed a disability report. (Docket 13 ¶ 209).  When asked about any changes in his condition, Mr. Lays Hard responded "[m]y left eye seeming to get worse. . . . my vision on my left

8

eye got worse [it's] really hard for me to read or see far away and even close. . . ." Id.  In 2011, an optometrist at the IHS Kyle Clinic concluded Mr. Lays Hard "had hyperopia [farsightedness] with astigmatism of the left eye, pseudophakia [cataracts] in both eyes, and . . . mild non-proliferative diabetic retinopathy[6] of the left eye." Id. ¶ 128.  Glasses with "polycarbonate lenses" were prescribed "to improve visual acuity and for safety reasons." Id.  The Commissioner acknowledges Mr. Lays Hard had "retinopathy, related eye disease." Id. ¶ 46.

Mr. Lays Hard testified at the administrative hearing in December 2012 that he depends on his left eye to read, so long as the letters are "large enough."[7] Id. ¶ 11.  He has difficulty picking objects off a table if they are smaller than "about a quarter of an inch to an eighth of an inch" in size.  Id.

---

[6]The American Academy of Ophthalmology defines nonproliferative diabetic retinopathy as "the earliest stage of diabetic retinopathy.  With this condition, damaged blood vessels in the retina begin to leak extra fluid and small amounts of blood into the eye.  Sometimes, deposits of cholesterol or other fats from the blood may leak into the retina." http://www.aao.org/eye-health/ tips-prevention/what-is-diabetic-retinopathy.  "[D]iabetic retinopathy symptoms may include: [s]pots, dots or cobweb-like dark strings floating in your vision (called floaters); [b]lurred vision; [v]ision that changes periodically from blurry to clear; [b]lank or dark areas in your field of vision; [p]oor night vision; [c]olors appear washed out or different; [v]ision loss." http://www.aao.org/ eye-health/tips-prevention/diabetic-retinopathy-symptoms.  See also (Docket 13 ¶ 285).

[7]Mr. Lays Hard did not know his corrected vision with glasses.  (AR at p. 112).  The ALJ did not ask for clarification as to the reading limitation.  As will be seen later in this order, it is important to know the nature and extent of Mr. Lays Hard's reading limitations.

In response to the ALJ's post-hearing interrogatories, Dr. Winkler concluded Mr. Lays Hard suffered from "? [decreased[8]] vision." (Docket 13 ¶ 229) (referencing Exhibit 2F[9] of the administrative record). She did not note right-eye blindness and was "unclear if cataract surgery improved vision." (AR at p. 1003). Dr. Winkler indicated Mr. Lays Hard would need a post-operative vision assessment before she could assess the extent of his visual impairment. (Docket 13 ¶¶ 241-42).

When asked if the visual impairment caused Mr. Lays Hard any functional limitations, Dr. Winkler did not respond to that series of questions. Id. ¶ 243. Those questions, without the corresponding "yes" and "no" checkboxes, were:

    a. Is the individual able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles?

    b. Is the individual able to read very small print?

    c. Is the individual able to read ordinary newspaper or book print?

    d. Is the individual able to view a computer screen?

    e. Is the individual able to determine differences in shape and color of small objects such as screws, nuts or bolts?

(AR at p. 1008-09).

---

[8]Indicated by a downward pointing arrow. (AR at p. 1004).

[9]Exhibit 2F is a 71-page medical record from Rapid City Regional Hospital which included Mr. Lays Hard's 2001 left eye cataract extraction and lens replacement and a 2010 hospitalization in which the chart noted blurred vision in his left eye. (AR at pp. 410 & 430).

On May 13, 2013, Ophthalmologist Dr. Abraham charted "preretinal hemorrhage surrounding disc inferior nasal and inferior temporal extending to edge of fovea [of the macula]" and "proliferative diabetic retinopathy, neovascularization [abnormal blood vessel formation] elsewhere" of the left eye. (AR at pp. 25-26). A panretinal photocoagulation laser procedure ("PRP") was performed on Mr. Lays Hard's left eye that day. Id. at p. 26. Follow-ups with Dr. Abraham after October 16, 2013, were planned.[10] Id. at p. 35.

The 2003 left eye visual test is not helpful in light of the subsequent significant medical complications Mr. Lays Hard experienced. The ALJ erred by adopting Dr. Winkler's opinions when she had not completely answered the interrogatories posed to her and it was obvious further visual testing was in order.

"It is the claimant's burden to establish that his impairment or combination of impairments are severe." Kirby, 500 F.3d at 707. "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). "The ALJ possesses no interest in denying benefits and must act neutrally in developing the record." Id. "Once aware of the critical issue" of Mr. Lays Hard's vision, "the ALJ should have taken steps to develop the record" by obtaining a current vision examination. "Because this evidence might have altered the outcome of the disability

---

[10]This information was provided to the Appeals Council, but apparently not considered significant because it affirmed the decision of the ALJ. (Docket 13 ¶ 3).

11

determination, the ALJ's failure to elicit it prejudiced [Mr. Lays Hard] in his pursuit of benefits." Id. at 839.

CHRONIC KIDNEY DISEASE[11]

Mr. Lays Hard argues the record shows he "had stage III chronic kidney disease with abnormal renal function tests, recurrent severe edema . . . and associated persistent anemia of chronic disease . . . with repeated hospitalizations for complications of chronic kidney disease or in combination with chronic kidney disease."  (Docket 16 at p. 18) (internal references omitted). The Commissioner contends "that because Lays Hard did not provide any evidence supporting a severe or presumptively disabling kidney condition at steps two and three of the disability process, the regulations did not require the ALJ to investigate or discuss this issue."  (Docket 19 at p. 1).  The Commissioner asserts "Lays Hard did not meet his burden of proof to establish chronic kidney disease as a severe impairment. . . . None of Lays Hard's treating or examining doctors provided treatment for chronic kidney disease or renal failure. . . . At most, they noted an impression or diagnosis of kidney disease, without documenting any kidney biopsies, treatment, problems with functioning, or hospitalizations." Id. at p. 5 (internal references omitted).

---

[11] "Anemia of chronic disease" as a consequence of chronic kidney disease will also be addressed in this section.

The medical records are replete with references to Mr. Lays Hard being treated for stage III chronic kidney disease.[12]  (Dockets 13 ¶¶ 93, 107, 118, 141, 152, 155 & 165 and 14 ¶¶ 30, 33, 34, 36, 37 & 84).  Mr. Lays Hard's laboratory test results chart this condition.[13]  (Docket 13 ¶¶ 105, 117, 137, 146, 150 & 161).  Anemia of chronic disease is included in the differential diagnoses of October 2010 and August 2012.  Id. ¶¶ 66 & 155.

Mr. Lays Hard had episodes of acute renal failure in September 2010, April 2011 and October 2012.[14]  Id. ¶¶ 114, 126-27 & 161.  The October 2012 episode resulted in Mr. Lays Hard being transported to Rapid City Regional Hospital where the emergency room physician charted the patient "was admitted in serious condition."  Id. ¶ 161.  Post-surgery for an infected umbilical hernia the physician included "chronic kidney disease Stage III" in the differential

---

[12] Stage III chronic kidney disease is associated with "[s]igns of moderate chronic renal insufficiency (where the GFR [Glomerular Filtration Rate] indicates 40% to 59% kidney function)."  http://www.nationalkidneycenter.org/chronic-kidney-disease/stages/?gclid=CMHTi46NjMsCFQsbHwod6mwNtQ.  Because of "[a]dvanced chronic renal insufficiency" a person may "experience one or more of the following symptoms: . . . [t]iredness or fatigue[,] [p]uffiness or swelling . . . [b]ack pain . . . [h]igh blood pressure [hypertension] . . . ."  http://www.nationalkidneycenter.org/chronic-kidney-disease/stages/stages-3-to-4/.  See also Docket 13 ¶¶ 271-72.

[13] See Docket 13 ¶¶ 271 & 300.  "Such tests include BUN, Creatinine - blood, Creatinine clearance, Creatinine - urine."  Id. ¶ 300.

[14] Acute renal failure as a result of chronic kidney disease continued into the records reviewed by the Appeals Council.  See Docket 14 ¶¶ 80-84.  In this instance, Mr. Lays Hard's laboratory results were so elevated the IHS Rapid City Clinic made an emergency call requiring him to return to the clinic for additional treatment.  Id.

13

diagnosis.  Id. ¶ 165.  The physician recommended Mr. Lays Hard's basic metabolic panel blood tests be followed to evaluate renal function.  Id. ¶ 166.  Mr. Lays Hard also was instructed to have complete blood count laboratory studies for anemia.  Id. ¶168.

A January 20, 2011, medical record charted "chronic kidney disease stage 3" as being added to Mr. Lays Hard's diagnosis on November 29, 2006.  (AR at p. 749).  Clinicians at the IHS Kyle Clinic were so concerned about proteinuria, a high level of protein in Mr. Lays Hard's urine, that nephrology referrals were sought to address the stage III chronic kidney disease.  (Dockets 13 ¶¶ 118 & 141 and 14 ¶ 34).  IHS Contract Services refused those referrals.[15]  (Docket 13 ¶¶ 118 & 141).

Because edema of the lower extremities is frequently associated with type II diabetes, it is difficult to discern from Mr. Lays Hard's medical records whether his episodes of edema were caused by liver failure, diabetes, renal failure or a combination of all three.  The medical records frequently identify two or all three of these significant diseases when addressing Mr. Lays Hard's edema.  Id. ¶¶ 54-56, 102-03, 126-27, 141-43, 152, 154-55, 161 & 164-66.

In early March 2013, Mr. Lays Hard's laboratory tests disclosed chronic renal failure, anemia, liver disease, protein calorie malnutrition and poorly

---

[15]The court takes judicial notice that for the past several years IHS denies referrals to outside medical specialists for financial reasons and not based on a patient's medical needs.  Fed. R. Evid. 201(b)(1).

controlled diabetes.  Id. ¶ 172.  Because of chronic kidney disease, Mr. Lays Hard could not be given Metformin to treat his type II diabetes.  Id. ¶¶ 172 & 316.

The Commissioner acknowledges Mr. Lays Hard suffers from chronic kidney failure.[16]  (Docket 13 ¶ 46).  The Commissioner contends Dr. Winkler did not know whether Mr. Lays Hard's condition met the 20 CFR § 416.922 12-month duration requirement for a severe impairment.  (Docket 19 at p. 6).  (referencing Docket 13 ¶ 219).  This argument is incomplete.  Dr. Winkler's February 28, 2013, answers to the interrogatories disclosed that she was unable to render an opinion because she would need to review the laboratory results following the October 2012 hospitalization "to see if renal failure resolved." (Docket 13 ¶ 223).  Dr. Winkler obviously had not reviewed the March 4, 2013, IHS Kyle Clinic laboratory results which were "significant for chronic renal failure [and] anemia . . . ."  Id. ¶ 172.  The renal failure addressed during the October 2012 hospitalization had not resolved itself.  The March 4, 2013, medical records were part of the administrative record prior to the ALJ's April 2,

---

[16]The Commissioner argues two state agency physicians concluded Mr. Lays Hard suffered from non-severe "nephoratic syndrome."  (Docket 19 at p. 5) (referencing AR at pp. 138 & 167).  "Nephrotic syndrome [is not] a disease.  It's a warning that something is damaging your kidneys.  Without treatment, that problem could cause kidney failure. . . . Nephrotic syndrome is often caused by . . . [a] type of kidney disease called minimal change disease (or nil disease)."  http://www.webmd.com/cancer/tc/nephrotic-syndrome-topic-overview.  The state agency physicians' opinions are rejected and the ALJ's decision evaluated in light of the Commissioner's admission.  Fed. R. Evid. 801(d)(C).

2013, decision and should have been disclosed to Dr. Winkler to permit her to supplement her interrogatory answers. Rather than acknowledge the multi-year history of repeated diagnosis of stage III chronic kidney disease, including the March 4, 2013, laboratory test results, the ALJ chose to ignore the administrative record before him and relied instead on Dr. Winkler's incomplete answer.

The ALJ erred at step two by failing to complete the analysis of whether Mr. Lays Hard's stage III chronic kidney disease is a severe impairment.[17]  42 U.S.C. § 405(g); Choate, 457 F.3d at 869; Howard, 255 F.3d at 580.

The court does not accept the Commissioner's argument that any error at step two is irrelevant because the ALJ proceeded to the next step.  (Docket 19 at p. 6).  The error by the ALJ is not irrelevant.  Failure to identify all of a claimant's severe impairments impacts not only the ALJ's credibility findings, consideration of activities of daily living, but most importantly, a claimant's residual functional capacity ("RFC").  "[F]ailure to consider plaintiff's limitations . . . infect[s] the ALJ's . . . further analysis under step four."  Spicer v. Barnhart, 64 Fed. App'x. 173, 178 (10th Cir. 2003).  "Failure to consider a known impairment in conducting a step-four inquiry is by itself, grounds for reversal."  Id.

---

[17]The Appeals Council perpetuated the error of adopting Dr. Winkler's less-than-complete answer when it chose to affirm the ALJ's decision.  (Docket 13 ¶ 3).

16

The ALJ erred as a matter of law at step two of the sequential evaluation process. The remainder of the ALJ's decision is similarly defective. Once all of Mr. Lays Hard's severe impairments are established the subsequent steps in the evaluation process must be reanalyzed. "With [these] central and potentially dispositive issue[s] unexplored by the ALJ, [the court has] no confidence in the reliability of the RFC upon which the ALJ based his decision." Snead, 360 F.3d at 839. Because of the errors at step two, the ALJ's RFC determination is defective. This constitutes reversible error. Spicer, supra. The evidence not appropriately considered by the ALJ detracts from the decision to deny disability benefits.[18] Reed, 399 F.3d at 920.

## ORDER

Based on the foregoing analysis, the court finds the matter should be remanded for further proceedings consistent with this order. Accordingly, it is

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 15) is granted.

---

[18]It is also troubling the ALJ found Mr. Lays Hard had not sought medical treatment from June 2011 to October 2012. (AR at p. 96). The Commissioner acknowledges this factual determination was false because Mr. Lays Hard sought medical treatment fourteen times during this one and one-half year period. (Docket 13 ¶ 173). In addition, the ALJ's decision reported that Mr. Tysdal, a vocational expert, and Dr. Atkins, a psychologist, testified at the hearing. See AR at pp. 88 & 93. These statements are clearly wrong as neither witness testified. See AR at pp. 106-25. These additional errors in the record detract from the decision of the ALJ.

IT IS FURTHER ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commissioner for rehearing consistent with the decision set out above.

Dated March 9, 2016.

BY THE COURT:
/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE